IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ONE RED CELLULAR PHONE CURRENTLY LOCATED AT 300 EAST MADISON STREET, BALTIMORE, MD, 21202 | Case No. 1:21-mj-1596 TMD |

**AFFIDAVIT IN SUPPORT OF**
**APPLICATION FOR SEARCH WARRANT**

I, Special Agent Zachary Britt, with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), being first duly sworn, hereby depose and state as follows:

**I.      PURPOSE OF THIS AFFIDAVIT**

1.      I submit this affidavit in support of an application for a search warrant authorizing the search of a red iPhone, as described in more detail in Attachment A, and in custody at the Baltimore Central Booking and Intake Center, located at 300 E. Madison St., Baltimore, MD 21202 , the "**SUBJECT DEVICE**".

2.      Based on the facts set forth in this affidavit, I submit there is probable cause to believe that Quinntin ROBINSON, a.k.a. "Russell Robertson", possessed a firearm as a prohibited person in violation of 18 U.S.C. § 922(g). The search warrant would authorize members of the ATF, or their authorized representatives including other law enforcement agents assisting in the above described investigation, to examine the **SUBJECT DEVICE** for the purpose of seizing electronically stored data described in Attachment B.

**II.     AFFIANT BACKGROUND AND EXPERTISE**

3.      I am a Special Agent with the ATF and currently assigned to the ATF Baltimore Field Division, Baltimore Group III. I have been employed by the ATF since 2016 and successfully completed the Criminal Investigator Training Program and Special Agent Basic Training at the

1

Federal Law Enforcement Training Center. I have conducted and participated in numerous investigations concerning the illegal possession of firearms, federal controlled substance laws, and the commission of violent crimes. I received specialized training and personally participated in various types of investigative activities, including, but not limited to: (a) physical surveillance; (b) the debriefing of defendants, witnesses, informants, and other individuals who had knowledge of firearms and controlled substance violations; (c) undercover operations; (d) the execution of search warrants; (e) the consensual monitoring and recording of conversations; (f) electronic surveillance through the use of pen registers and trap and trace devices; (g) Title III investigations; and (h) the handling and maintenance of evidence.

4. Through my training and experience, I know the habits, methods, routines, practices, and procedures commonly employed by persons engaged in trafficking firearms and their unlawful possession. Traffickers use cellphones to coordinate with suppliers, customers, and co-conspirators. They frequently switch phones or use multiple phones to evade detection. I also know the techniques employed by traffickers to keep records of their trafficking activities, to conceal proceeds of their illegal conduct, and to evade law enforcement. For example, they use cellphones, addresses, and vehicles subscribed to or registered in names other than their own to avoid detection by law enforcement.

5. I also know that persons prohibited from possessing firearms will often utilize unlawful means of obtaining them such as burglary, theft, or trading them for narcotics. Information surrounding the unlawful transfer of firearms and their prohibited possession is often memorialized within the possessor's cell phone. Cell phones may also contain images of the firearms with or without their possessor and communication documenting their transfer.

6. Further, individuals involved with illegal activities tend to use their cellular devices

to call or text accomplices after the crime has been committed. Additionally, an individual may communicate with another person to strategize and attempt to hide the belongings or merchandise from the crime committed. More specifically, I know that members of criminal activities use cellular telephones to further their objectives by:

    a. Communicating with other co-conspirators by talking and by sending email messages, text messages, and messages through social media (e.g., Facebook);

    b. Storing contact information of co-conspirators; and

    c. Taking photographs and recording videos of co-conspirators and contraband.

7. I submit this affidavit for the limited purpose of establishing probable cause for a search warrant. I have not included every fact known to me concerning this investigation to date. Rather, I set forth only those facts I believe are necessary to establish probable cause. I have not, however, excluded any information known to me that would defeat a determination of probable cause. The information set forth in this affidavit derives from my personal knowledge and observations; discussions with other law enforcement officers and witnesses; and my review of police reports and public records. All conversations and statements described in this affidavit are related in substance and in part unless otherwise indicated.

### III. PROBABLE CAUSE

8. On November 18, 2020, at approximately 4:29 p.m., officers from the Baltimore City Police Department (BPD) responded to Foreman Mills, located at 2501 Belair Road, Baltimore, MD 21213 for a report of an armed person. When officers arrived, they learned that store security staff detained an individual, later identified as ROBINSON, for theft.

9. Security had observed ROBINSON put items inside his jacket to avoid paying for them. Security then stopped ROBINSON. ROBINSON admitted that had a firearm on him, which

security immediately recovered.

10. Officers met with the security team and observed a recovered firearm, a Taurus Millennium G2, bearing serial number TKT66181. The firearm was loaded with 12 rounds of ammunition. Officers read ROBINSON his *Miranda* rights. ROBINSON voluntarily waived his rights and told officers that he possessed the firearm solely for protection.

11. Officers also recovered two sandwich bags containing suspected marijuana, weighing less than ten grams.

12. ROBINSON was arrested and transported for booking. The **SUBJECT DEVICE** was left with his property and stored at the Baltimore Central Booking and Intake Center during intake procedures. ROBINSON remains in custody and the **SUBJECT DEVICE** is still at the facility with the rest of his property. ATF learned the **SUBJECT DEVICE** was still in his property as of March 18, 2021. The facility will not release the **SUBJECT DEVICE** or additional identifying factors about it without a search warrant.

13. Prior to the events set forth in this affidavit, ROBINSON was convicted in 2010 of distribution of controlled dangerous substances in the Circuit Court for Baltimore City. He was sentenced to five years of incarceration. Given this sentence, ROBINSON is prohibited from possessing a firearm and should be aware that he was convicted of a crime that carries a punishment of over a year in prison.

14. While ROBINSON was charged in this instance under the name "Quinntin Robinson", he has previously been known as Russell Robertson. His Maryland State Identification number ("SID") comes back to both names. ATF was able to determine ROBINSON's property was still at the facility by providing his SID number.

15. The firearm was test-fired at the BPD Firearms lab and expelled a projectile by the

action of an explosive, and therefore qualifies as a firearm under 18 U.S.C. § 921(a)(3). The firearm was not manufactured in Maryland and therefore affected commerce prior to its recovery in Maryland.

16. Since ROBINSON's arrest, he has not had access to the **SUBJECT DEVICE**. For this reason, I believe any data and information contained on the **SUBJECT DEVICE** generated by ROBINSON, may be recovered by a forensic analysis.

### IV. BACKGROUND CONCERNING ELECTRONIC COMMUNICATIONS DEVICES

17. The fruits and instrumentalities of criminal activity are often concealed in digital form. Furthermore, digital camera technology is often used to capture images of tools and instrumentalities of pending criminal activity. The **SUBJECT DEVICE** has both digital storage capacity and digital camera capabilities.

18. The mere fact of a cellular phone's call number, electronic serial number or other identifying information may be of evidentiary value as it may confirm that a particular cell phone is the phone identified during a wiretap, pen register, or other electronic investigation.

### V. FORENSIC ANALYSIS OF ELECTRONIC COMMUNICATIONS DEVICES

19. Based on my training and experience, I know that electronic devices such as cellular phones (smartphones) can store information for long periods of time. Similarly, things that have been viewed via the internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools. There is probable cause to believe that things that were once stored on the **SUBJECT DEVICE** may still be stored on those devices, for various reasons, as discussed in the following paragraphs.

20. As further described in Attachment B, this application seeks permission to locate

not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **SUBJECT DEVICE** was used, the purpose of its use, who used it, and when.

21. There is probable cause to believe that this forensic electronic evidence might be on the **SUBJECT DEVICE** because data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

22. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

23. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how an electronic device was used, the purpose of its use, who used it, and when.

24. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to

investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

25.    Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

26.    Because this warrant seeks only permission to examine a device already in the possession of the Baltimore Central Booking and Intake Center, the execution of this warrant for information stored within the **SUBJECT DEVICE** will not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

27.    Again, the **SUBJECT DEVICE** remains in the custody of the Baltimore Central Booking and Intake Center, located at 300 E. Madison St. Baltimore, MD 21202. The only known specifics of the phone requested for authorization to search are detailed in Attachment A and the types of information expected to be recovered from the device is listed in Attachment B.

## VI.    CONCLUSION

28.    Accordingly, there is probable cause to believe that evidence will be found from an analysis of the recovered **SUBJECT DEVICE**. The **SUBJECT DEVICE** may contain the records of the most recent calls, which may include calls with persons involved in the offense(s). The **SUBJECT DEVICE** may contain copies of SMS or text or other electronic communications relating to activities associated with the offense(s). The **SUBJECT DEVICE** may also contain a variety of other electronic evidence, including electronic communications through various cellular

or internet-based applications, photographs, and other information.

29. Wherefore, in consideration of the facts presented, I respectfully request that this Court issue a search warrant for the **SUBJECT DEVICE**, and authorize the search of the items described in Attachment A, for the information set forth in Attachment B, where applicable, which constitute fruits, evidence and instrumentalities of possessing a firearm as a prohibited person, in violation of 18 U.S.C. § 922g.

Respectfully submitted,

_____
Special Agent Zachary Britt
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) on this __27__ day of __May__ _____, 2021.

_____
The Honorable Thomas DiGirolamo
United States Magistrate Judge

8

# ATTACHMENT A
## Items to be Searched

The **SUBJECT DEVICE**,

a. A red iPhone, currently in custody at the Baltimore Central Booking and Intake Center, located at 300 E. Madison St. Baltimore, MD 21202. The phone is Quinntin Robinson's (a.k.a. Russell Robertson) property, under Maryland State Identification number 2737261.

## ATTACHMENT B

### Items to be Seized

All records contained in the items described in Attachment A, which constitute evidence of violations of 18 U.S.C. §§ 922(g) (prohibited person in possession of a firearm) including the following items, as outlined below:

1. Contact logs that refer or relate to the user of any and all numbers on the **SUBJECT DEVICE**.

2. Call logs reflecting date and time of received calls.

3. Any and all digital images and videos of persons associated with this investigation.

4. Text messages to and from the **SUBJECT DEVICE** that refer or relate to the crimes under investigation.

5. Records of incoming and outgoing voice communications that refer or relate to the crimes under investigation.

6. Voicemails that refer or relate to the crimes under investigation.

7. Voice recordings that refer or relate to the crimes under investigation.

8. Any data reflecting the phone's location.

9. Contact lists.

10. Any and all records related to the location of the user(s) of the devices.

11. For the **SUBJECT DEVICE**:

    a. Evidence of who used, owned, or controlled the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

    b. evidence of software that would allow others to control the Devices, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

  c. evidence of the lack of such malicious software;

  d. evidence of the attachment to the **SUBJECT DEVICE** of other storage devices or similar containers for electronic evidence;

  e. evidence of counter forensic programs (and associated data) that are designed to eliminate data from the **SUBJECT DEVICE**;

  f. evidence of the times the **SUBJECT DEVICE** was used;

  g. passwords, encryption keys, and other access devices that may be necessary to access the **SUBJECT DEVICE**;

  h. documentation and manuals that may be necessary to access the Devices or to conduct a forensic examination of the **SUBJECT DEVICE**;

  i. contextual information necessary to understand the evidence described in this attachment.

 With respect to the search of any of the items described above which are stored in the form of magnetic or electronic coding on computer media or on media capable of being read by a computer with the aid of computer-related equipment (including CDs, DVDs, thumb drives, flash drives, hard disk drives, or removable digital storage media, software or memory in any form), the search procedure may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein, while permitting government examination of all the data necessary to determine whether that data falls within the items to be seized):

 1. surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for markings it contains and opening a drawer believed to contain pertinent files);

 2. "opening" or cursorily reading the first few "pages" of such files in order to determine their precise contents;

 3. "scanning" storage areas to discover and possible recover recently deleted files;

 4. "scanning" storage areas for deliberately hidden files; or

 5. performing key word searches or other search and retrieval searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation.

If after performing these procedures, the directories, files or storage areas do not reveal evidence of the specified criminal activity, the further search of that particular directory, file or storage area, shall cease.

With respect to the search of the information provided pursuant to this warrant, law enforcement personnel will make reasonable efforts to use methods and procedures that will locate and expose those categories of files, documents, communications, or other electronically stored information that are identified with particularity in the warrant while minimizing the review of information not within the list of items to be seized as set forth herein, to the extent reasonably practicable. If the government identifies any seized communications that may implicate the attorney-client privilege, law enforcement personnel will discontinue its review and take appropriate steps to segregate all potentially privileged information so as to protect it from substantive review. The investigative team will take no further steps regarding any review of information so segregated absent further order of the court. The investigative team may continue to review any information not segregated as potentially privileged.